## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
JAMES WARE,                               )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        Civil Action No. 12-0395 (ABJ)
                                          )
HYATT CORPORATION,                        )
                                          )
                    Defendant.            )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff James Ware brings this action against the Hyatt Corporation, alleging that the

defendant subjected him to a hostile work environment on the basis of both his age and his race,

in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29

U.S.C. § 621 *et seq.* and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42

U.S.C. § 2000e *et seq.*  Defendant has moved for summary judgment on both claims.  Def.'s Mot.

for Summ. J. [Dkt. # 35] ("Def.'s Mot.").  Because the Court finds that there is no genuine dispute

of material fact regarding the severity and pervasiveness of the age-related conduct at issue, and

because plaintiff's Title VII hostile work environment claim is time-barred, defendant is entitled

to judgment as a matter of law on both claims.  Therefore, the Court will grant defendant's motion

for summary judgment and dismiss the case.

# BACKGROUND

## I.  Factual Background[1]

Plaintiff James Ware is a 66-year old African-American male.  3d. Am. Compl. [Dkt. # 17] ("3d Am. Compl.") ¶ 3.  From 1976 until 2009, he worked full-time in the culinary department at the Hyatt Regency hotel on Capitol Hill ("the Hyatt" or "the hotel").  Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. [Dkt. # 35-2] ("Def.'s SOF") ¶¶ 9, 11.  Over the years, plaintiff received several promotions, eventually holding the position of sous chef in the hotel's Park Promenade restaurant.  *Id.* ¶ 10.  As a sous chef, plaintiff's responsibilities included preparing and producing food, menu planning, assisting with scheduling, handing out work assignments to the Park Promenade staff, and ensuring staff compliance with defendant's policies.  *Id.* ¶ 14.  Plaintiff received an hourly wage plus approximately ten hours of overtime per week, and he typically worked Tuesday through Saturday.  *Id.* ¶¶ 11, 13.

During the relevant period of his employment, plaintiff first reported to executive chef Greg Bauer, from November 1996 to May 2006, and then to executive chef Michael Barber, from May 2006 through plaintiff's departure.  *Id.* ¶¶ 15, 20.  Plaintiff also reported to executive sous chefs Kevin Villalovos, from August 2006 to March 2008; Trevor Burt, from February 2007 to

---

1  Pursuant to Local Civil Rule 7(h), defendant submitted its statement of undisputed material facts in support of its motion for summary judgment.  Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. [Dkt. # 35-2] ("Def.'s SOF").  In response, plaintiff filed his statement of genuine issues of material fact in dispute, which objected to some, but not all, of defendant's statement of facts.  Pl.'s Statement of Material Facts in Dispute [Dkt. # 38-1] at 24–31 ("Pl.'s SOF").  Where plaintiff did not contest defendant's statement of material facts, the Court will adopt them as undisputed.  LCvR 7(h)(1) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").  Where plaintiff has disputed defendant's statement of facts, the Court will cite to evidence in the record.

March 2009; Tom Olson, from April 2007 through plaintiff's departure; and Nicolas Flores, from August 2008 through plaintiff's departure. *Id.* ¶¶ 16, 20.

Plaintiff alleges that beginning in approximately 2002, when he was diagnosed with diabetes and arthritis, his managers at the hotel began to treat him differently. 3d Am. Compl. ¶ 6. Specifically, plaintiff claims that he was singled out on the basis of his age and race, and that he was subjected to a hostile work environment in violation of the ADEA and Title VII. *Id.* ¶¶ 8, 20–31; *see generally* Pl.'s Corrected Opp. to Def.'s Mot. for Summ. J. [Dkt. # 38-1] ("Pl.'s Opp.").[2]

In support of his ADEA hostile work environment claim, plaintiff alleges that he was subjected to numerous instances of discriminatory conduct, including certain statements made by the executive chef:

- Executive chef Barber made "maybe more than ten," but "perhaps" less than twenty, comments about plaintiff's age. Dep. of James Ware, Dec. 5, 2013, Corrected Ex. 1 to Pl.'s Opp. [Dkt. # 40-1] ("Ware Dep. in Supp. of Pl.'s Opp.") 159:4–18.[3]

---

[2] Plaintiff's opposition to defendant's summary judgment motion was due on September 8, 2014. Minute Order (Aug. 5, 2014). On September 9, 2014, Plaintiff filed his opposition, but failed to include any supporting exhibits. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. # 37]. The following day, plaintiff filed a revised version of the opposition and included the omitted exhibits. Pl.'s Notice [Dkt. # 38]; Pl.'s Corrected Opp. to Def.'s Mot. for Summ. J. [Dkt. # 38-1] ("Pl.'s Opp."); Exs. to Pl.'s Opp. [Dkt. # 38-2]. However, several pages of deposition testimony relied upon by plaintiff in his opposition were missing from the exhibits, and the Court ordered plaintiff to submit corrected copies. Minute Order (Dec. 12, 2014). Plaintiff complied with the Court's order on December 19, 2014. Pl.'s Praecipe [Dkt. # 40]; Pl.'s Corrected Exs. 1–4 to Pl.'s Opp. [Dkt. # 40-1]. Defendant did not object to plaintiff's filing of the revised opposition, nor to the filing of the corrected exhibits. The Court will therefore treat plaintiff's corrected opposition and the original and corrected exhibits submitted in response to the Court's order as timely filed.

[3] Plaintiff and defendant each provided different excerpts of plaintiff's deposition testimony in support of their summary judgment pleadings. *See* Dep. of James Ware, Dec. 5, 2013, Corrected Ex. 2 to Pl.'s Opp. [Dkt. # 40-1] ("Ware Dep. in Supp. of Pl.'s Opp."); Dep. of James Ware, Dec. 5, 2013, Ex. 1 to Decl. of Kelly Scindian in Supp. of Def.'s Mot. [Dkt. # 35-4] ("Ware Dep. in Supp. of Def.'s Mot."). For the sake of clarity, the Court will refer to the deposition excerpts attached to plaintiff's opposition as "Ware Dep. in Supp. of Pl.'s Opp." and will refer to the deposition excerpts attached to defendant's motion as "Ware Dep. in Supp. of Def.'s Mot."

- Of those, plaintiff recalls only four or five specific comments, including one incident, in or around 2007, when Barber told plaintiff, "you are too old to have this job."  Pl.'s Opp. at 5, 11; Ware Dep. in Supp. of Pl.'s Opp. 157:2–24.

- On one or two occasions at an unknown point in time, Barber commented about Ware's arthritic walk, stating, "here come the old man, wobbling down the hall."  Pl.'s Opp. at 5, 11; Ware Dep. in Supp. of Pl.'s Opp. 90:3–91:6.

- With regard to plaintiff's use of BenGay for his arthritic joints, Barber once commented, "[s]omething in here smells. . . . Oh, that's just James Ware." Pl.'s Opp. at 5, 11; Ware Dep. in Supp. of Pl.'s Opp. 92:2–10, 93:2–5.

- In March 2009, the floor mats plaintiff used to relieve arthritis pain caused by long periods of standing were removed from plaintiff's work station.  Pl.'s Opp. at 5, 11; Ware Dep. in Supp. of Pl.'s Opp. 93:23–94:8.  Plaintiff does not know who moved the floor mats or why they were taken.  Ware Dep. in Supp. of Pl.'s Opp. 94:9–11.  Plaintiff discussed the missing mats with Barber, who told him "if [he] was a younger man, [he] wouldn't need the mats," and that "the hotel can't afford them, so [he]'d just have to buy more BenGay."  Pl.'s Opp. at 5, 11–12; Ware Dep. in Supp. of Pl.'s Opp. 93:23–94:8.

According to plaintiff, executive sous chef Tom Olson also made comments about plaintiff's age:

- "[A] lot of times," instead of calling plaintiff by his first name, "he'd say, 'Hey, old man,'" even after plaintiff told Olson, "I'm not your old man."  Pl.'s Opp. at 6, 12; Ware Dep. in Supp. of Pl.'s Opp. 164:16–21, 165:6–25.  Plaintiff recalls that this occurred shortly before he decided to leave the hotel.  Pl.'s Opp. at 6, 12; Ware Dep. in Supp. of Pl.'s Opp. 166:2–21.

- Olson also once said to plaintiff, "'[c]ome on, old man, you need to move faster,' or something to that effect."  Pl.'s Opp. at 6, 12; Ware Dep. in Supp. of Pl.'s Opp. 164:16–165:2.

Plaintiff recounts comments about his age made by other staff, as well:

- The hotel's General Manager ("GM") Michael Smith once commented to plaintiff that plaintiff "wasn't moving as fast as [he] used to move," but plaintiff could not recall when this occurred.  Def.'s SOF ¶¶ 20, 45; Ware Dep. in Supp. of Def.'s Mot. 145:7–17.

- Executive sous chef Trevor Burt testified that Barber and John Davenhall, the hotel's Food and Beverage Director, "called [plaintiff] old man all the while." Pl.'s Opp. at 6; Dep. of Trevor Burt, Mar. 31, 2014, Ex. 3 to Pl.'s Opp. [Dkt. # 38-2] ("Burt Dep.") 85:1–20.

4

In addition, plaintiff offered evidence of comments made to or overheard by other employees when plaintiff was not present:[4]

- When Burt was hired in February 2007, Barber made a comment to him to the effect of "James [Ware] is horrible . . . James is an old man, you know, we've got to get James out of here."  Pl.'s Opp. at 5; Burt Dep. 95:1–8.  Barber also told Burt that plaintiff "was an old guy . . . he needs to go, he's slow. . . . He walks with a limp."  Pl.'s Opp. at 6; Burt Dep. 39:9–25, 40:21–23, 41:1–10.

- At some point in 2009, Barber said to Aminata Mansaray, a banquet sous chef, and other kitchen personnel, "[y]ou people are too old anyway" to be in the kitchen.  Pl.'s Opp. at 5–6, 12; Dep. of Aminata Mansaray, Mar. 31, 2014, Corrected Ex. 4 to Pl.'s Opp. [Dkt. # 40-1] ("Mansaray Dep.") 23:10–21.

- Davenhall once told Mansaray, "you old people need to leave so young blood can come in."  Pl.'s Opp. at 6; Mansaray Dep. 75:2–8.

In support of his Title VII hostile work environment claim based on racial discrimination, plaintiff asserts that Restaurant Manager Matt Zylstra called plaintiff "black boy" "more than one time," although this did not occur "frequently."  Pl.'s Opp. at 2; Ware Dep. in Supp. of Pl.'s Opp. 163:3–20.  Plaintiff also states, in connection with the Title VII count, that Zylstra addressed him by saying, "hey, dummy" "on more than one occasion," and called him "fat" more than ten, but less than twenty, times.  Pl.'s Opp. at 2; Ware Dep. in Supp. of Pl.'s Opp. 162:17–20, 178:4–22.

Plaintiff also put forth evidence of race-related comments that were made to or overheard by other employees when plaintiff was not present:

---

4       "When [discriminatory] statements are not made directly to a plaintiff, generally a hostile environment cannot be established."  *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005), *aff'd sub nom. Nurriddin v. Griffin*, 222 F. App'x 5 (D.C. Cir. 2007).  However, a court may examine whether such comments, when considered alongside the other discriminatory incidents directed at the plaintiff, are relevant to and indicative of a hostile work environment.  *See, e.g.*, *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 166–67 (D.D.C. 2013) (finding that "[i]ncidents of workplace racism that did not directly involve the plaintiff may be relevant to whether there is a hostile work environment," but cautioning that "[c]ourt[s] should be careful when weighing this kind of evidence, especially when it is not direct and strong evidence of . . . animus").

- In May 2007, Barber was overheard by several employees commenting that the hotel needed to hire a "replacement monkey," after an African-American employee had resigned. 3d Am. Compl. ¶ 8. Barber admitted to using the word "monkey," but testified that it was an inside joke between Barber and the employee. Dep. of Michael Barber, Apr. 16, 2014, Ex. 3 to Decl. of Kelly Scindian in Supp. of Def.'s Mot. [Dkt. # 35-6] ("Barber Dep.") 65:11–66:9.

- Plaintiff was told "third-hand" that someone said that plaintiff "looked more like a monkey with the beard on." Pl.'s Opp. at 2; Ware Dep. in Supp. of Pl.'s Opp. 176:13–25. Plaintiff testified, "I don't know if Mr. Barber said it." Ware Dep. in Supp. of Pl.'s Opp. 176:13–25.

- Mansaray once overheard Davenhall say to Barber "the n***** is leaving," referring to the African-American GM Michael Smith, who was leaving the hotel. Pl.'s Opp. at 3–4; Mansaray Dep. 38:1–39:10.

- Mansaray also expressed her view that there was a "racist issue" at the hotel – she "witnessed a monkey-related comment in the kitchen that she did not find funny," and she said that "nothing is run fairly when it comes to a certain race." Pl.'s Opp. at 4; *see generally* Mansaray Dep. 29:3–39:21. Mansaray also opined that "if a certain race do something, it's a big issue in the kitchen." Mansaray Dep. 31:25–32:1.

Finally, plaintiff points to certain facially-neutral events that he alleges were based on his age and/or race and contributed to the hostile work environment:

- Shortly after September 11, 2001, plaintiff perceived that his role as sous chef was reduced from a supervisory position to "more of a hands-on chef." Pl.'s Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 34:22–35:17.

- Around 2006, the time of Barber's arrival at the hotel, plaintiff felt that his authority as a manager changed; plaintiff initially had a limited role in initiating the discipline of subordinate employees, but later, "when [plaintiff] talked to the chef [Barber] about various things, he would more or less take it as a joke or just kind of laugh it off." Pl.'s Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 60:19–61:24.

- In the time leading up to his resignation, plaintiff complained that another employee, Gerald Henry, was being offered overtime hours before plaintiff was offered them, and that overtime was not being allocated according to the rotation imposed by plaintiff's union. Pl.'s Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 45:8–46:23.

- Between February 2007 and March 2009, Barber "was pushing Trevor [Burt] to do things to [plaintiff]," to "see what [plaintiff is] doing, . . . make sure

[plaintiff is] on the line."  Pl's Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 191:22–192:10.

- Barber would make comments about plaintiff's handwriting and spelling errors "frequently."  Pl.'s Opp. at 4; Ware Dep. in Supp. of Pl.'s Opp. 87:12–89:3. Mansaray also observed Barber's making such comments, including that plaintiff's "handwriting look like chicken feet" and asking "What school do you attend?  Do you ever been in school?"  Pl.'s Opp. at 4; Mansaray Dep. 40:14–41:1.

- Once, when the kitchen staff was "in the process of making menu changes," plaintiff proposed a menu to Barber, who questioned "What's this here?  What's that there?"  Pl.'s Opp. at 4; Ware Dep. in Supp. of Pl.'s Opp. 87:12–88:12. Later, plaintiff found his proposed menu "in the trash can, and none of [his] ideas was put in place."  Pl.'s Opp. at 4; Ware Dep. in Supp. of Pl.'s Opp. 89:4–21.

On August 19, 2009, plaintiff notified the hotel that he intended to resign from his employment.  Def.'s SOF ¶ 30.  Plaintiff left voluntarily and was not asked to resign.  *Id.*  On April 27, 2010, plaintiff filed a charge with the District of Columbia Office of Human Rights ("DC OHR"), alleging discrimination, retaliation, and a hostile work environment.  *Id.* ¶ 31.  The DC OHR determined on April 13, 2011 that there was no probable cause for plaintiff's claims.  *Id.* ¶ 32.  Plaintiff requested that the agency's director review the decision, and the determination was upheld.  *Id.*  Plaintiff was issued a right-to-sue notice on December 12, 2011.  *Id.*

## II.    Procedural History

Plaintiff filed a six-count complaint in this case in March 2012 and amended his complaint in June of that same year.  *See* Compl. [Dkt # 1]; Am. Compl. [Dkt. # 2].  Defendant moved to dismiss the amended complaint.  Def.'s Mot. to Dismiss [Dkt. # 4].  Plaintiff opposed the motion and sought leave to file a second amended complaint.  Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 10]; Pl.'s Mot. for Leave to File 2d Am. Compl. [Dkt. # 11].  The Court determined that all of the causes of action in plaintiff's amended complaint and proposed second amended complaint – except the hostile work environment claims which are the subject of this motion – failed to state

plausible claims for relief.  Mem. Op. and Order (Mar. 27, 2013) [Dkt. # 16].  As a result, the Court granted in part and denied in part plaintiff's request to file a second amended complaint:  it permitted plaintiff to file an amended complaint including his Title VII and ADEA hostile work environment claims, and it denied defendant's motion to dismiss as moot.  *Id.*  Plaintiff then filed his third amended complaint, with only those two counts remaining.  3d Am. Compl.

After discovery, defendant filed the motion for summary judgment that is now ripe for resolution.  Def.'s Mot.; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 35-1] ("Def.'s Mem.").  Defendant argues first that plaintiff's Title VII claim is time barred because none of the alleged acts that form the basis of that claim occurred within the 300-day limitations period.  Def.'s Mem. at 8–9.  Second, defendant contends that plaintiff's Title VII and ADEA claims fail because neither the race-related nor the age-related conduct was sufficiently severe or pervasive as a matter of law to create a hostile work environment.  *Id.* at 9–15.  Defendant further argues that plaintiff's reliance on facially-neutral conduct is misplaced because:  that conduct was not "because of" plaintiff's age or race, it was not sufficiently severe or pervasive to create a hostile work environment, and claims based upon that conduct are time-barred.  *Id.* at 15–21.  Finally, defendant asserts that it is shielded from liability by its affirmative defense because it exercised reasonable care to prevent harassing behavior and because plaintiff unreasonably failed to take advantage of the corrective and preventative opportunities that were available to him.  *Id.* at 21–23.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).   To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).   The mere existence of any factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).   A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).   However, a nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support" of its position. *Anderson*, 477 U.S. at 252.   If the nonmovant's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

## ANALYSIS

Plaintiff set forth his ADEA and Title VII claims as two separate hostile work environment counts in his third amended complaint, 3d Am. Compl. ¶¶ 20–31, and defendant addressed the two counts separately in its motion for summary judgment. *See generally* Def.'s Mem.   The Court therefore will examine plaintiff's ADEA and Title VII hostile work environment claims independently. *See generally Whorton v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 334 (D.D.C. 2013) (separately analyzing hostile work environment claims based on race, gender, and

retaliation).  The Court concludes that no genuine dispute of material fact exists as to the severity and pervasiveness of the alleged age-related comments directed at plaintiff, and that defendant is therefore entitled to summary judgment on plaintiff's ADEA hostile work environment claim. Further, the Court finds that plaintiff's Title VII hostile work environment claim is time-barred, because none of the acts of race-related conduct directed at plaintiff occurred within the 300-day statutory period.

I.      **Plaintiff's ADEA Hostile Work Environment Claim**

Defendant argues that it is entitled to summary judgment on plaintiff's ADEA claim because the age-related comments directed at plaintiff were not sufficiently severe or pervasive to support liability, Def.'s Mem. at 9–15, and the facially-neutral conduct was not related to plaintiff's age, is time-barred, and was not severe or pervasive.  *Id.* at 15–21.  Finally, defendant argues that it is protected by its affirmative defense because plaintiff unreasonably failed to take advantage of defendant's policies, procedures, and processes aimed at preventing and remedying discrimination in the workplace.  *Id.* at 21–23.  Because the Court finds as a matter of law that the age-related conduct in the record was not severe or pervasive enough to create a hostile work environment, the Court will grant summary judgment on Count I, and it need not reach defendant's affirmative defense.[5]

To make out a hostile work environment claim, a plaintiff must demonstrate that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult'" and that this

---

5       As several courts in this District have recognized, "'[a]n ADEA cause of action for hostile work environment has not yet been recognized in this Circuit.'"  *Shipman v. Vilsack*, 692 F. Supp. 2d 113, 118 n.3 (D.D.C. 2010), quoting *Sewell v. Chao,* 532 F. Supp. 2d 126, 141–42 (D.D.C. 2008); *accord Williams v. Chertoff*, 495 F. Supp. 2d 17, 41 n.20 (D.D.C. 2007).   But even assuming, without deciding, that such a claim is valid, plaintiff has failed to show that the conduct at issue is sufficiently severe and pervasive so as to affect a term or condition of his employment.

behavior is "'sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993), quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986).  Examining such a claim requires both a subjective and an objective inquiry:  no violation is present "if the victim does not subjectively perceive the environment to be abusive" or if the conduct "is not severe or pervasive enough to create an objectively hostile or abusive work environment."  *Id.* at 21–22.

"To determine whether a hostile work environment exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), quoting *Harris*, 510 U.S. at 23; *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (same).  "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other."  *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014).  The Supreme Court has made clear that the conduct must be so extreme "to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  This "ensure[s] that Title VII does not become a general civility code" that would involve the courts in policing "the ordinary tribulations of the workplace."  *Id.* (internal quotation marks and citations omitted). Assuming that a hostile work environment claim can be brought under the ADEA, the same standard would apply.  *See, e.g.*, *Singleton v. Potter*, 402 F. Supp. 2d 12, 41 (D.D.C. 2005).

A.    **The Age-Related Conduct Directed at Plaintiff Was Not Sufficiently Severe or Pervasive to Create a Hostile Work Environment**

In support of his ADEA claim, plaintiff contends that he was subjected to a "litany of ongoing, repeated, offensive comments" that were made over a prolonged period of time and led

to his decision to resign.  Pl.'s Opp. at 15.  But the specific acts that plaintiff was able to adduce, while insulting and offensive, do not add up to an actionable claim.

First, plaintiff asserts that the executive chef, Michael Barber, made "maybe more than ten," but "perhaps" less than twenty, comments about his age.[6]  Ware Dep. in Supp. of Pl.'s Opp. 159:4–15.  However, plaintiff could only identify four or five specific comments:  (1) Barber once told plaintiff, "you are too old to have this job," in or around 2007, Ware Dep. in Supp. of Pl.'s Opp. 157:2–24; (2) Barber "maybe once or twice" commented about Ware's arthritic walk, stating "here come the old man, wobbling down the hall," Ware Dep. in Supp. of Pl.'s Opp. 90:3–91:3; (3) Barber once said, with regard to plaintiff's use of BenGay for his arthritis, "[s]omething in here smells. . . . Oh, that's just James Ware," Ware Dep. in Supp. of Pl.'s Opp. 92:2–93:22; and (4) in March 2009, after the floor mats which plaintiff used to relieve his arthritis pain were removed from his work station, Barber told plaintiff "if [he] was a younger man, [he] wouldn't need the mats," and that "the hotel can't afford them, so [he]'d just have to buy more BenGay."  Pl.'s Opp. at 5, 11–12; Ware Dep. in Supp. of Pl.'s Opp. 93:23–94:8.  Plaintiff could not recall any other specific comments from Barber about his age.  Ware Dep. in Supp. of Pl.'s Opp. 158:24–159:3.

Plaintiff also claims that executive sous chef Tom Olson made comments about his age.  According to plaintiff, Olson once told him, "'[c]ome on, old man, you need to move faster,' or something to that effect."  *Id.* 164:16–165:2.  Additionally, "a lot of times,"[7] Olson would address plaintiff as "old man" instead of calling him by his name.  *Id.* 164:16–21.  Plaintiff acknowledges that at first he "may have thought" Olson's comment was "a term of endearment," but then he "got

---

6       Executive sous chef Trevor Burt generally corroborated plaintiff's claims, testifying that Barber and John Davenhall, the hotel's Food and Beverage Director, "called [plaintiff] old man all the while."  Burt Dep. 85:1–20.

7       Plaintiff offers no specifics regarding when or how often Olson called him "old man" in his opposition, other than to say that it occurred "frequently."  *See* Pl.'s Opp. at 6, 12, 14–16.

the idea that it wasn't."  *Id.* 165:6–16.  Plaintiff eventually told Olson, "I'm not your old man," but Olson continued to address him that way.  *Id.* 165:6–166:13.  Plaintiff recalled that this conversation occurred around the time that he left his employment at the hotel.  *Id.* at 166:18–21. Barber also recalled overhearing Olson call plaintiff "old man," but he "viewed it as just a kidding around relationship."  Barber Dep. 143:16–144:6.

Finally, plaintiff maintains that GM Michael Smith once commented that plaintiff "wasn't moving as fast as [he] used to move."  Ware Dep. in Supp. of Def.'s Mot. 145:7–17.

The Court finds that the conduct plaintiff describes was not sufficiently severe or pervasive, as a matter of law, to foster a hostile work environment based on age.  As another court in this District put it, in assessing a hostile work environment claim, "[t]he key terms . . . are 'severe,' 'pervasive,' and 'abusive.'"  *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003).  In other words, the conduct must be objectively so offensive that it "'alter[s] the conditions of [a plaintiff's] employment and create[s] an abusive working environment.'"  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998), quoting *Harris*, 510 U.S. at 21.  Even granting plaintiff the benefit of all inferences to which he is entitled, the Court cannot find that the conduct at issue in this case rises to the requisite level.

First, as in the *Baloch* case, plaintiff's "assertion of pervasive and constant abuse is undermined by the sporadic nature of the conflicts."  *Baloch*, 550 F.3d at 1201 (D.C. Cir. 2008). Plaintiff places one of Barber's age-related comments in 2007 and another in 2009, but he could not remember when the others were made.  He recalled Olson's calling him "old man" around the time he left his employment at the hotel in 2009, but he could not date any of Olson's other comments.  And because Smith left the hotel in May 2008, Def.'s SOF ¶¶ 20, 36, his comment to plaintiff must have occurred before that date.  "In discerning severity and pervasiveness, we assess

the timeline of events as a whole," *Brooks*, 748 F.3d at 1276, and a handful of comments over the course of several years cannot meet the pervasiveness threshold. *See, e.g.*, *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he alleged events are temporally diffuse, spread out over a four-year period, suggesting a lack of pervasiveness.").

Similarly, regarding the name-calling, plaintiff does not attempt to date or quantify his general allegations that Olson called him "old man" "frequently" or "a lot of times," or that Burt overheard Davenhall and Barber refer to plaintiff as "old man" "all the while." It is plaintiff's duty, in opposing summary judgment, to establish more than "[t]he mere existence of a scintilla of evidence in support" of his position. *Anderson*, 477 U.S. at 252. But plaintiff has offered no evidence that would permit this Court to find that the name-calling was in fact frequent or pervasive. *Cf. Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (reversing district court grant of summary judgment on ADEA hostile work environment claim where plaintiff's supervisor exclusively addressed him by "names like 'old mother******,' 'old man,' and 'pops'" and evidence showed that this occurred "a half-dozen times *daily*" during plaintiff's three-month employment) (emphasis added); *see also Hurley v. Advance Stores Co.*, No. 6:09-CV-1232ORL31GJK, 2010 WL 3610444, at *3 (M.D. Fla. Sept. 14, 2010) ("[B]eing referred to as an 'old man' on some occasions – and [the plaintiff] does not share the number of times this occurred, or the circumstances – is not enough, standing alone, to change the terms and conditions of [plaintiff's] employment."). So plaintiff has not met his burden to demonstrate that the work environment was objectively abusive.

Furthermore, "in order to be actionable . . . [an] objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. And here, the

14

evidence does not tend to show that the subjective prong is met:  that plaintiff considered Olson's name-calling to be "severe" or "abusive" behavior.  Plaintiff acknowledged that at first, "he may have thought" that Olson called him "old man" "as a term of endearment."  Ware Dep. in Supp. of Pl.'s Opp. 164:16–165:25.  More importantly, plaintiff did not recall ever reporting any of the age-related comments to the hotel's Human Resources ("HR") department or to any of his supervisors. *See id.* at 160:21–161:3 (could not recall reporting Barber's age-related comments); 166:22–25 (could not recall reporting Olson's "old man" comments).  These facts raise a significant question as to whether plaintiff himself found the comments to be offensive, as is required to succeed on a hostile work environment claim.

In any event, allegations "of disparaging remarks and other negative comments do not sufficiently demonstrate a significant level of offensiveness."  *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 189 (D.D.C. 2012), citing *Harris,* 510 U.S. at 21; *see also Bryant v. Leavitt*, 475 F. Supp. 2d 15, 19, 28 (D.D.C. 2007) (granting summary judgment on hostile work environment claim where the plaintiff's immediate supervisor "reprimanded and criticized him, made unwelcome comments about his age," including that the plaintiff "was 'part of the older generation' and was 'too old to have children in high school,'" and "singled him out for close scrutiny by management").  That is because the "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment."  *Harris*, 510 U.S. at 21 (internal quotation marks and citations omitted).

The Court's finding that the evidence is insufficient in this case is consistent with decisions in similar cases in this court and elsewhere.  In *Sewell v. Chao*, the plaintiff claimed that she was subjected to a hostile work environment because of her age in violation of the ADEA, and she pointed to the harassing behavior of two supervisors.  532 F. Supp. 2d 126, 141 (D.D.C. 2008).

The plaintiff alleged that one supervisor, after observing the plaintiff "having trouble walking because of her arthritis," stated "[O]h, you're having trouble walking today?  Why don't you just retire?"  *Id.* at 130.  Over the course of several years, this supervisor "continued to make 'snide' comments urging [the plaintiff] to retire."  *Id.*  The plaintiff also claimed that another supervisor "contributed to the hostile work environment through 'harassment with work' and with her threatening behavior on two occasions."  *Id.* at 141.  In granting the defendant's motion for summary judgment, the court found that that the plaintiff's allegations of "[s]tray remarks made occasionally over an approximately eight-year period" did not "meet the demanding standards for a hostile work environment claim."  *Id.* at 141–42.  Rather, the court determined, "[t]hese kinds of allegations 'constitute exactly the sort of isolated incidents that the Supreme Court has held cannot form the basis for a Title VII [and by extension, an ADEA] violation.'"  *Id.* at 142 (alteration in original), quoting *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005).

Courts in other circuits addressing similar age-based harassment have also concluded that comparable conduct is not sufficiently severe and pervasive to create a hostile work environment. *See, e.g.*, *Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181, 183–85 (8th Cir. 2014) (dismissing ADEA hostile work environment claim at summary judgment where the plaintiff's supervisor stated to the plaintiff "you've got a lot of age on you and you've been here long enough," frequently referenced the plaintiff's age, and repeatedly called the plaintiff "old man"); *Rodriguez-Fonseca v. Baxter Healthcare Corp.*, 899 F. Supp. 2d 141, 145–46, 151 (D.P.R. 2012) (dismissing ADEA hostile work environment claim at summary judgment where the plaintiff's immediate supervisor "harassed him by referring to him as an 'old man,' 'crazy old man,' 'little old man,' and 'crazy, little, old man'" "whenever they encountered one another" over the course of the plaintiff's ten-year employment).

In the Title VII context, courts in this District have found that "incidents involving only verbal comments, particularly by co-workers, must generally be quite pervasive and severe to be actionable." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 78 (D.D.C. 2013). If these principles apply under Title VII, where the availability of relief for a hostile work environment is firmly established, the isolated comments and name-calling to which plaintiff was subjected here cannot be found to rise to the requisite level of severity under the ADEA, where a cause of action has yet to be formally recognized in this Circuit. *See Shipman*, 692 F. Supp. 2d at 118 n.3 ("'An ADEA cause of action for hostile work environment has not yet been recognized in this Circuit.'"), quoting *Sewell,* 532 F. Supp. 2d at 141.

### B.      The Age-Related Conduct Directed at Other Employees Cannot Save Plaintiff's Claim

In further support of his ADEA claim, plaintiff identifies comments made to or overheard by other employees, when plaintiff was not present. Specifically, plaintiff relies on Burt's testimony that when Burt was hired in February 2007, Barber made a comment to the effect that "James [Ware] is horrible . . . James is an old man, you know, we've got to get James out of here." Pl.'s Opp. at 5; Burt Dep. 95:1–2. Burt also stated that, around the same time, Barber told him that plaintiff "was an old guy . . . he needs to go, he's slow. . . . He walks with a limp." Pl.'s Opp. at 6; Burt Dep. 40:21–23. Additionally, Mansaray testified that at some point in 2009, Barber said to her, "[y]ou people are too old anyway" to be in the kitchen, Pl.'s Opp. at 5–6, 12; Mansaray Dep. 23:10–21, and that Davenhall once told Mansaray, "you old people need to leave so young blood can come in." Pl.'s Opp. at 6; Mansaray Dep. 75:2–8.

The Court is troubled by Burt's testimony regarding the comments made by Chef Barber about "getting rid of" plaintiff, as these statements are from plaintiff's supervisor and are directly related to his age. And it is true that "[i]ncidents of workplace [discrimination] that did not directly

involve the plaintiff may be relevant to whether there is a hostile work environment." *Dudley*, 924 F. Supp. 2d at 166–67.   But Barber did not terminate or fire plaintiff, or take any tangible employment action against him, at the time those comments were made or at any other point. Plaintiff voluntarily resigned from his position in September 2009, Def.'s SOF ¶ 30, months after the last comment that plaintiff could recall being made by Barber about his age.   "Conduct directed at others rather than at [the] plaintiff . . . is less indicative of a hostile work environment."   *Lester*, 290 F. Supp. 2d at 31, citing *Gleason v. Mesirow Fin'l Inc.,* 118 F.3d 1134, 1144 (7th Cir. 1997); *accord Goldin*, 382 F. Supp. 2d at 108 ("When [discriminatory] statements are not made directly to a plaintiff, generally a hostile environment cannot be established.").   Where, as here, the comments actually directed at plaintiff were not sufficiently severe or pervasive, the comments to others do not suffice to supply the missing elements of plaintiff's ADEA claim.

## C.   Plaintiff Has Not Shown a Causal Connection Between the Facially-Neutral Conduct He Identifies and His Age

Plaintiff also claims that a series of facially-neutral actions taken by defendant's employees formed part of the hostile work environment to which he was subjected.   Plaintiff alleges:   (1) that his staff was cut after September 11, 2001, Pl.'s Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 34:22–35:17; (2) that around the time of Barber's arrival in 2006, plaintiff's authority as a manager changed, and that when plaintiff talked to Barber about various things, "he would more or less take it as a joke or just kind of laugh it off," Pl.'s Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 60:19–61:24; (3) that from 2007 through 2009, Barber routinely was pushing Burt to check on plaintiff and to ensure that plaintiff was on the line, Pl's Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 191:22–192:10; (4) that Barber would make comments about plaintiff's handwriting and spelling errors

"frequently," Pl.'s Opp. at 4; Ware Dep. in Supp. of Pl.'s Opp. 87:12–89:3;[8] (5) that plaintiff once proposed a menu change to Barber, but that Barber criticized it and plaintiff later found his proposed menu "in the trash can, and none of [his] ideas was put in place," Pl.'s Opp. at 4; Ware Dep. in Supp. of Pl.'s Opp. 87:12–88:12, 89:4–21; (6) that the floor mats under plaintiff's work station were removed and not replaced, Pl.'s Opp. at 5, 11; Ware Dep. in Supp. of Pl.'s Opp. 93:23–94:8; and (7) that in the time leading up to his departure, another employee, Gerald Henry, was being offered overtime hours before plaintiff was offered them, and overtime was not being allocated according to the rotation imposed by plaintiff's union. *See* Pl.'s Opp. at 3; Ware Dep. in Supp. of Pl.'s Opp. 45:8–46:23.

To prevail on a hostile work environment claim, a plaintiff cannot rely on "an array of unrelated discriminatory or retaliatory acts." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). Rather, the acts "must collectively meet the independent requirements of that claim (i.e., be 'sufficiently severe or pervasive . . . .'), and must be adequately connected to each other (i.e., 'all acts which constitute the claim are part of the same unlawful employment practice')." *Id.*, quoting *Harris*, 510 U.S. at 21, and *Morgan*, 536 U.S. at 122. Evidence that bears no connection to a plaintiff's protected status cannot support a hostile work environment claim. *Harris v. Wackenhut Servs., Inc.*, 419 F. App'x 1, 2 (D.C. Cir. 2011).

Many of the acts plaintiff has identified, such as the discarded menu, Barber's commenting about his handwriting, and Barber's directing plaintiff's immediate supervisor to check on plaintiff's work, are more like "the ordinary tribulations of the workplace" than conduct that is so extreme that it "amount[s] to a change in the terms and conditions of employment." *Faragher*,

---

8       Mansaray also observed Barber making such comments, including that "[plaintiff's] handwriting look like chicken feet" and asking "What school do you attend?  Do you ever been in school?" Pl.'s Opp. at 4; Mansaray Dep. 40:14–41:1.

524 U.S. at 788 (1998).  And plaintiff has not produced any evidence – other than his own self-serving conjecture – sufficient to establish a causal connection between any of these incidents and his protected status.

For example, regarding the reduction in plaintiff's own staff, plaintiff acknowledged that defendant "cut the staff across the hotel" after the September 11, 2011 attacks, which plaintiff understood to be "for economical reasons," Ware Dep. in Supp. of Def.'s Mot. 34:22–36:23, not because of his age.  And while plaintiff thought that Barber directed someone to remove the floor mats at plaintiff's station as "[a]nother needle" for plaintiff, he nevertheless testified that he did not know why the mats went missing or who was responsible for taking them, and that he had no evidence to support of his belief that Barber was responsible for their removal.  *Id.* at 94:9–95:7.  Finally, plaintiff's claims regarding overtime – that he was routinely passed over for overtime hours in favor of Gerald Henry, a younger employee, and that overtime was not being allocated by rotation – are contradicted by evidence in the record.  While plaintiff did complain in 2008 about a perceived inequality in the distribution of overtime hours, plaintiff does not dispute that he had the highest or second-highest number of overtime hours in the culinary department from 2006 through 2009.  Def.'s SOF ¶ 13; *see also* Ex. D to Aff. of Myrna Harris in Supp. of Def.'s Mot. [Dkt. # 35-24] (email from defendant's HR representative to plaintiff's union representative attaching plaintiff's timecards and stating that plaintiff "CONSISTENTLY receives a large amount of OT each week which far exceeds the amount of OT incurred by Gerald [Henry]").

As another court in this District put it, "[w]here, as here, a plaintiff adopts a 'kitchen sink' approach to crafting a hostile work environment claim, the Court can only conclude that these acts are so different in kind and remote in time from one another that they cannot possibly comprise part of the same hostile work environment." *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 65–66

(D.D.C. 2012).  Plaintiff's reliance on facially-neutral conduct, without any evidence to link that conduct to his protected class, cannot save his ADEA hostile work environment claim.

For the reasons stated above, the Court finds that plaintiff has not shown that a genuine dispute of material fact exists regarding whether he was subjected to a hostile work environment based on his age in violation of the ADEA.  The Court therefore will grant defendant's motion for summary judgment on Count I.

**II.       Plaintiff's Title VII Hostile Work Environment Claim**

Count II of the third amended complaint alleges that defendant subjected plaintiff to a hostile work environment on the basis of his race in violation of Title VII.  3d Am. Compl. ¶¶ 28–31.  Defendant argues that plaintiff's Title VII claim must fail because plaintiff cannot identify any act of racial harassment that falls within the 300-day statutory period that preceded the filing of the DC OHR complaint.  Def.'s Mot. at 8–9; Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 39] at 2–3.  The Court agrees.

In order for a Title VII claim to be actionable, a plaintiff must demonstrate that at least one act that comprises the hostile work environment occurred within 300 days of the filing of a formal charge of discrimination.  *See Morgan*, 536 U.S. at 118 ("In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."); *see also* 42 U.S.C. § 2000e-5(e)(1).  Plaintiff filed his charge with the DC OHR on April 27, 2010, Def.'s SOF ¶ 31, making July 1, 2009 – 300 days earlier – the operative date for determining the timeliness of plaintiff's Title VII claim.

But not one of the race-related comments plaintiff identifies falls within this timeframe.  In support of his Title VII claim, plaintiff first asserts that Restaurant Manager Matt Zylstra "periodically" called him "black boy," "dummy," and "fat" or "fat ass."  Pl.'s Opp. at 2; Ware

Dep. in Supp. of Pl.'s Opp. 162:17–20, 163:3–20, 178:4–22.   Further, plaintiff claims that Executive Chef Barber was once overheard – by other employees, not by plaintiff – stating that the hotel would have to hire a "replacement monkey" after another African-American employee left the hotel.  3d Am. Compl. ¶ 8; Pl.'s Opp. at 4; *see also* Mansaray Dep. 30:1–31:14, 39:22–40:13.   Finally, plaintiff relies on testimony from banquet sous chef Mansaray, who overheard Davenhall commenting that "the n***** is leaving," referring to the departure of former GM Michael Smith from the hotel.[9]  Pl.'s Opp. at 3–4; Mansaray Dep. 38:1–39:10.  Plaintiff does not dispute that Zylstra left the Hyatt in November 2006 and that Smith left in 2008.  Def.'s SOF ¶¶ 36, 41; Pl.'s SOF ¶¶ 36, 41.  And by plaintiff's own admission, Barber's "replacement monkey" comment was made in May 2007.  3d Am. Compl. ¶ 8.  Therefore, none of these comments occurred within the limitations period of July 1, 2009 to April 27, 2010.

In opposing defendant's motion on this issue, plaintiff asserts that defendant's timeliness argument incorrectly "operates on two (2) isolated references" to race-related conduct, and that in reality, "the record is particularly significant" with regard to the discriminatory actions plaintiff endured.  Pl.'s Opp. at 11.  But plaintiff still fails to identify a race-related comment or action that occurred within the statutory period.   Instead, plaintiff recites a list of unrelated age-based statements directed at him during his employment, and he fails to provide dates within the statutory period for many of those events, as well.  *See id.* at 11–12 ("[T]he record is particularly significant, *especially on the employer's hostile age based comments . . . .*") (emphasis added).

---

9      Plaintiff also claims that he was told "third-hand" that someone said that plaintiff "looked more like a monkey with the beard on."  Pl.'s Opp. at 2; Ware Dep. in Supp. of Pl.'s Opp. 176:13–25.  Plaintiff thought that Barber might have made the comment, but admitted "I don't know if Mr. Barber said it."  Ware Dep. in Supp. of Pl.'s Opp. 176:13–25.  However, plaintiff did not attempt to provide a date for this comment, and it therefore cannot support the timeliness of his Title VII hostile work environment claim.

Furthermore, the potentially timely conduct that plaintiff does identify – like the March 2009 removal of the floor mats from his work station, which persisted through his departure, Pl.'s Opp. at 5, 11; Ware Dep. in Supp. of Pl.'s Opp. 93:23–94:8, or Olson's calling him "old man" around the time he left the hotel, Pl.'s Opp. at 6, 12; Ware Dep. in Supp. of Pl.'s Opp. 164:16–166:21 – do not support a Title VII hostile work environment claim.  "[I]ncidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim." *Baird*, 662 F.3d at 1251, quoting *Morgan,* 536 U.S. at 121.  Such a linkage exists between incidents "if, for example, they 'involve[] the same type of employment actions, occur[] relatively frequently, and [are] perpetrated by the same managers.'"  *Id.*, quoting *Morgan*, 536 U.S. at 120; *see also Morgan*, 536 U.S. at 118 (stating that a plaintiff cannot recover for acts that "had no relation to the [other] acts . . . or [that] for some other reason, such as certain intervening action by the employer, [were] no longer part of the same hostile environment claim").

Plaintiff has failed to offer any evidence that would permit a reasonable jury to infer that the few timely actions of which he complains are related to his race.  Plaintiff has not even attempted to argue that such a connection exists, let alone created a genuine dispute of material fact on that issue.  *See* Pl.'s Opp. 10–12.  For example, plaintiff does not contend that Olson's calling plaintiff "old man" had anything to do with the race-related comments made by Zylstra and Barber, or that Olson himself ever directed race-related comments at plaintiff.  And plaintiff admits that he does not know who took the floor mats away or why they were taken.  Ware Dep. in Supp. of Pl.'s Opp. 94:9–11.  Accordingly, conduct or harassment that is unrelated to plaintiff's race, even if it occurred within the 300-day period, cannot save plaintiff's Title VII claim.

For these reasons, the Court finds that there is no genuine dispute of material fact as to whether plaintiff's Title VII hostile work environment claim is time-barred, and it will grant defendant's motion for summary judgment on that count.[10]

## CONCLUSION

The Court finds that defendant is entitled to judgment as a matter of law on Count I because the conduct of which plaintiff complains was not sufficiently severe or pervasive, as a matter of law, to constitute a hostile work environment based on age.  Furthermore, the Court concludes that Count II of the third amended complaint is time-barred because no act comprising plaintiff's Title VII hostile work environment claim occurred within the statutory period.  Accordingly, the Court will grant defendant's motion for summary judgment and will dismiss the case.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 23, 2015

---

[10]     Even if plaintiff's Title VII claim was not time-barred, the Court is doubtful that the conduct he identified was severe or pervasive enough to create a hostile work environment based on race.  The comments were few and far between, and plaintiff was not present for, nor the object of, several of them.  While the comments were offensive and unprofessional, their frequency, severity, and nature make them more akin to "mere offensive utterance[s]" than "physically threatening or humiliating" conduct that "unreasonably interferes with an employee's work performance."  *Morgan*, 536 U.S. at 116 (internal quotation marks and citation omitted); *see also Wackenhut Servs.*, 419 F. App'x at 1–2 (affirming summary judgment where the plaintiff "point[ed] to only three racially motivated comments directed at him during a one-year period" and where "the remaining evidence . . . bears no connection to his race"); *Park v. Howard Univ.*, 71 F.3d 904, 906 (D.C. Cir. 1995) ("'[C]asual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action.'"), quoting *Bundy v. Jackson*, 641 F.2d 934, 943 n.9 (D.C. Cir. 1981).  Plaintiff's conclusory assertions and failure to offer any substantive legal argument on the severity or pervasiveness of the conduct in his opposition further emphasizes the tenuousness of plaintiff's Title VII claim.  *See* Pl.'s Opp. at 13.